UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DAYNA SUZANNE ROBINETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:26-CV-22-REW-EBA |
| v. ) | |
| ) | OPINION & ORDER |
| APPALACHIAN REGIONAL ) | |
| HEALTHCARE, INC., ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Dayna Suzanne Robinette moves the Court for judgment, seeking reversal of Defendant Appalachian Regional Healthcare, Inc.'s ("ARH") denial of Robinette's claim for disability retirement benefits, an award of benefits due under her plan, and reasonable attorney's fees and costs under 29 U.S.C. § 1132(g), or, failing an award of benefits, remand to the Plan Administrator for further consideration consistent with the Court's findings. *See* DE 26 (Motion) at 1-2, DE 28 at 3. ARH responded, *see* DE 27, and Robinette replied, *see* DE 28. The administrative record appears at DE 25. The matter is ripe for review.

I. **BACKGROUND**

Robinette served as a long-time ward clerk for ARH until her resignation in 2023. *See* DE 26-1 at 1; DE 25 at 99. She resigned from her position due to her "chronic and worsening pain from congenital left hip dysplasia and degenerative lumbar spine disease." *See id.* Following her resignation, Robinette submitted a claim for disability retirement benefits pursuant to the Appalachian Regional Healthcare, Inc. Pension Plan (the "Plan"). *See id.*; DE 25 at 97. Attached to the application was a letter from Teresa Robinson, APRN, Robinette's treating provider. *See*

DE 25 at 104-05. She explained that Robinette was born with congenital hip dysplasia, was born without a hip, and had surgery when she was eight years old to try to help build a hip. *See id.* She noted that upon Robinette reaching her mid-30s, she suffered from progressive left hip joint pain and lower back pain due to a marked lower extremity deformity. She outlined the imaging Robinette received and the treatment modalities Robinette attempted. "Despite all interventions," Robinette has achieved only short-term pain relief and faces "ongoing pain" that is "progressively worse." *See id.* Ultimately, Ms. Robinson opined that Robinette was totally disabled and "not a suitable candidate for gainful employment in any field." *See id.* at 105.

Pursuant to Plan Section 6.04(d), the Plan's Pension Committee delegated the initial decision on Robinette's disability claim to Bluegrass Health Network, Inc. ("BHN"). *See* DE 27 at 1; DE 25 at 41. Through BHN, Dr. Shelley Freimark, ARH's designated physician, provided a physician review report based, without physical examination, on a review of Robinette's medical history records. *See* DE 25 at 106-11. Dr. Freimark acknowledged that Robinette had a severe deformity of the hip joint with severe osteoarthritis and that she had tried various treatment paths, mostly with inconsistent or temporary relief. *See id.* Still, and despite recognition of no long-term effectiveness in the records, she described Robinette as "managing the pain." She opined that Robinette is not "Totally Disabled" within the meaning of Plan Section 2.38 and that she is "employable but would require restrictions due to her left hip osteoarthritis and subsequent hip pain." *See id.* The proposed restrictions included "no standing or walking greater than 20 minutes at a time and for no more than a total of 2 hours in an 8-hour work shift" and "no repetitive bending." *See id.* at 110.

When the opinions of the Plan participant's treating provider and ARH's designated physician conflict, as they did here, Plan Section 6.04(d) provides for a review of the claim by a

2

third, independent physician with pertinent specialization designated by the participant's treating provider and ARH's designated physician. *See id.* at 41. The Committee will then defer to the decision made by the selected third physician unless that physician's conclusion was clearly arbitrary or erroneous. *See id.* Accordingly, Robinette[1] sat for an independent medical examination ("IME") by Dr. David Jenkinson, the independent physician designated by Dr. Freimark and Ms. Robinson. *See* DE 27 at 2. Following an interview, physical examination, and a review of certain medical records, Dr. Jenkinson opined that Robinette did not meet the definition of "Totally Disabled" under the Plan, stating that she is capable of working "in an almost exclusively sedentary position" provided she has adequate pain control. *See* DE 25 at 118. Deferring to this opinion, which the Committee called the "third, final and binding exam," the Committee initially denied Robinette's claim. *See id.* at 119. Robinette requested review of this decision. *See id.* at 120. The Committee, upon review of the physical examination reports and medical documentation provided, determined that Robinette did not meet the Plan's definition of "Total Disability" and was therefore not eligible for disability retirement benefits under Plan Section 4.06. *See id.* at 123. The Committee noted that Robinette had submitted no new documents or argument, and it referenced the Plan-based mechanics: "[T]he Committee will defer to the decision of the third independent physician." *See id.* at 124.

Robinette then filed a complaint against ARH in this Court under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, seeking administrative review of ARH's denial of her request for disability retirement benefits. *See* DE 1 (Complaint). Robinette alleged that ARH's decision to deny coverage is not supported by the administrative record. *See id.* at 2.

---

[1] The Court assumes the mechanics for choosing Dr. Jenkinson were Plan-appropriate; Robinette makes no complaint about that.

3

Robinette now moves for judgment, seeking reversal of the Committee's decision denying benefits and an award of benefits under the Plan. *See* DE 26 at 1-2.

## II. LEGAL STANDARD

"District courts review an ERISA denial-of-benefits claim *de novo* 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Kramer v. Am. Elec. Power Exec. Severance Plan*, 128 F.4th 739, 749-50 (6th Cir. 2025) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When the benefit plan vests discretionary authority in the plan administrator, the district court reviews the administrator's denial of benefits under the arbitrary and capricious standard. *See id.* at 750 (quoting *Shaw v. AT & T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 546 (6th Cir. 2015)). The Plan unambiguously grants the Committee discretion to interpret and apply the plan and to make eligibility determinations; both parties agree on this point.[2] As such, the Court reviews Robinette's denial under the arbitrary and capricious standard.

The arbitrary and capricious standard is extremely deferential, *see Kramer*, 128 F.4th at 750, but it is not merely a "rubber stamp for the administrator's determination." *See Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). The administrator's decision satisfies this standard only when it is "the result of a deliberate, principled reasoning process[,] supported by substantial evidence," *see Kramer*, 128 F.4th at 750 (quoting *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 552 (6th Cir. 2008)), and "rational in light of the plan's provisions[.]" *See id.* (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991)). "When it is possible to offer a

---

[2] Plan Section 6.03 provides: "The Pension Committee will have the full power to administer the Plan in all of its details, subject, however, to the requirements of ERISA. This power shall include having the sole and absolute discretion to interpret and apply the provisions of the Plan to determine the rights and status hereunder of any individual, to decide disputes arising under the Plan, and to make any determinations and findings of fact with respect to benefits payable hereunder and the persons entitled thereto as may be required for any purpose under the Plan." *See* DE 25 at 38-39.

4

reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shaw*, 795 F.3d at 547 (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 2009). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 549 (6th Cir. 2020) (quoting *General Med., P.C. v. Azar*, 963 F.3d 516, 520 (6th Cir. 2020)).

When reviewing a denial-of-benefits claim under ERISA, the court's consideration is limited to the evidence that was before the plan administrator when the final decision was made. *See McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998)).

### III.   ANALYSIS

Robinette contends that ARH's denial of disability retirement benefits was "arbitrary and capricious, unsupported by substantial evidence, and contrary to the terms of the plan." *See* DE 26 at 1. She advances three arguments in support of this contention. First, she argues that the Committee applied an incorrect standard of disability in making the disability determination. *See* DE 26-1 at 2. Second, she claims the Committee's reliance on Dr. Jenkinson's opinion in reaching its decision to deny benefits was arbitrary and capricious. *See id.* at 4. Third, she contends that the medical evidence provides compelling support that she is "Totally Disabled" as provided in the Plan. *See id.* at 6. The Court analyzes each argument in turn.

#### A.   Disability Definition

Plan Section 4.06 requires that a plan participant be "Totally Disabled" to become eligible for disability retirement benefits. *See* DE 25 at 24. Plan Section 2.38 defines "Totally Disabled" as, in relevant part, "a physical or mental condition…which prevents the member from continuing

5

employment." *See id.* at 10. The Committee found that Robinette did not meet this definition because "[b]oth the Committee's designated physician and the third independent physician found that [Robinette is] able to perform in a sedentary occupation." *See id.* at 124.

In deferring to the physicians' opinions, the Committee adopted an interpretation of "continuing employment" as continuing employment in any job or capacity at ARH. The crux of Robinette's argument is centered on this interpretation. Noting the absence of a definition for "continuing employment," she argues that the term is susceptible to more than one reasonable interpretation, thus making ambiguous the definition of "Totally Disabled." *See* DE 26-1 at 2-3. Specifically, she argues one could reasonably interpret "continuing employment" to mean that the participant cannot continue in his or her own employment or employment substantially similar in nature. *See id.* Accordingly, in her view, because "Totally Disabled" is subject to two reasonable interpretations, it must be construed in favor of the beneficiary. *See id.* This helps her theory because the ward clerk position would exceed the limitations imposed by Drs. Jenkinson and Freimark.

Robinette's argument, which is premised on the incorrect application of a legal standard also known as *contra proferentum*, ignores the Plan's grant of interpretive deference to the Committee. *See* DE 25 at 38. Though contract law may typically dictate interpretation of an ambiguous term against the drafting party, the Sixth Circuit has held that *contra proferentum* is "inherently incompatible with *Firestone* deference." *See Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 266 (6th Cir. 2018). "[W]hen *Firestone* deference applies," as the parties agree it does here, "a court may not invoke *contra proferentum* to 'temper' arbitrary-and-capricious review." *Id.* Therefore, proceeding under the *Firestone* deferential review, the Court first asks whether the Plan language is clear. *See id.* at 269. If it is, the Court must enforce it. If

6

it is ambiguous, meaning subject to multiple reasonable interpretations, *Firestone* dictates deference to the Committee's reasonable interpretation. *See id.*

Robinette argues there is manifest ambiguity in the "Totally Disabled" definition based on its use of "continuing employment." *See* DE 26-1 at 2-3. Accepting this as true, the decision turns on whether the Committee's interpretation of "continuing employment" as "continuing employment with ARH in any capacity" is reasonable. The Court holds it is. The language used in the definition is straightforward and includes no qualifiers about the capacity in which employment must be continued, contrary to what Robinette suggests. Reading the language's plain text, one could reasonably arrive at the interpretation adopted by ARH, which focuses on work ability, not the capacity to perform a specific role. This does not make Robinette's reading of the definition unreasonable. But Robinette's interpretation being reasonable does not render the Committee's interpretation unreasonable. Robinette herself admits that there are competing reasonable interpretations, which essentially ends the argument in this review prism. Thus, the Court finds the Committee's interpretation reasonable, and ARH's reliance on this interpretation was therefore not arbitrary and capricious. Robinette's first argument fails.

### B. Reliance on Dr. Jenkinson's opinion

The Committee notified Robinette of initial benefits denial on November 20, 2023, via letter. *See* DE 25 at 119. In that letter, the Committee indicated that its basis for denying benefits was the "third, final and binding exam" conducted by Dr. Jenkinson, who found she did not meet the Plan's definition of "Totally Disabled." *See id.* Robinette appealed this decision, and the Committee, in denying benefits and affirming the decision, again leaned on Dr. Jenkinson's opinion pursuant to Plan Section 6.04(d), which requires deference to the IME so long as it is not "clearly arbitrary or erroneous." *See id.* at 41, 124.

7

Dr. Jenkinson's IME consisted of an interview, a physical examination, and a review of select medical records, including imaging reports, Tug Valley Internal Medicine records, and records from orthopedic specialist Dr. Robert Royalty. *See id.* at 114. Though acknowledging Robinette's condition of "advanced osteoarthritis of the left hip which has greatly restricted her mobility," Dr. Jenkinson opined that Robinette is not totally disabled under ARH's definition because she "would be capable of working in an almost exclusively sedentary position with the ability to get up and move for short periods of time." *See id.* at 118. However, Dr. Jenkinson qualified the view: "Her ability to work in an almost exclusively sedentary position would be dependent on adequate pain control," and again, "It is my opinion that Ms. Robinette would be employable in an almost exclusively sedentary position *assuming* that she had adequate pain control." *See id.* (emphasis added).

Robinette contends such reliance by the Committee was in fact arbitrary and capricious. *See* DE 26-1 at 6-7. In support, Robinette argues that Dr. Jenkinson's opinion contradicts his own clinical findings and fails to reconcile with the longitudinal record. *See id.* The Court agrees that the Committee reached an arbitrary and capricious decision in this case and that Robinette is entitled to benefits.

First, Dr. Jenkinson plainly did not review or have access to the full record. The Sixth Circuit has held that a denial of benefits based on a reviewer's opinion is arbitrary and capricious when the reviewer's opinion is based on incomplete records. *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002); *Smith v. Health Servs. of Coshocton*, 314 F. App'x 848, 861 (6th Cir. 2009) ("The provision of an incomplete administrative record by a plan administrator to a reviewer for the purpose of assessing benefits or coverage is considered arbitrary and capricious unless all relevant medical records relating to a claim are provided for review.");

8

*Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265-66 (6th Cir. 2007) (finding rescission of coverage arbitrary and capricious where plan administrator supported decision based on cherry-picked review of the record) . In *Spangler*, the claimant, who was initially awarded long term disability benefits due to her spondylolisthesis, had her benefits terminated after a vocational consultant opined that she could be employed in her prior job and other comparable jobs. *See id.* at 360. The Sixth Circuit reversed, holding that the plan administrator's reliance on an opinion that was based on incomplete records, and that the ultimate decision of denying benefits in light of the administrative record, was arbitrary and capricious. *See id.* at 362. Dr. Jenkinson's audit of the records was woefully and prejudicially truncated. Dr. Freimark, ARH's selected physician and the first reviewer, discussed in her report records from Mountain Comprehensive Care Center and neurologist Dr. Sheikh, among others. The Mountain Comprehensive Care Center records discuss, among other things, Robinette's mental health issues and her struggle with substance abuse, which included use of Suboxone "usually" purchased on the street. *See id.* at 109. Dr. Sheikh's records indicate he opined that Robinette was fully disabled due to her medical conditions and pain. *See id.* Dr. Jenkinson, who *only* reviewed Tug Valley Internal Medicine and Dr. Royalty records, makes no reference to any of these records, signaling that he had only part of the medical history before him. The incomplete record is critical given the administrative record and Dr. Jenkinson's ultimate opinion.

Dr. Jenkinson's opined Robinette had an ability to work with specific limits, but he conditioned that opinion on adequate pain management. *See* DE 25 at 118. This condition directly implicates pain treatment efficacy, and her history with controlled substances surely would be a key factor in this determination. Dr. Jenkinson shows no cognizance that there would be specific patient history pertinent to this issue, however, because those records were not assessed in his

9

IME, or they were received and ignored. That omission establishes arbitrariness because it goes directly to a key conditional aspect of the opinion. How could the pain management stricture be met, effectively, when a reported aspect of pain management (the prescription opioids as discussed in the Tug Valley records, e.g.,) would have particular concerns in application to Ms. Robinette?[3] It is arbitrary for Jenkinson to assume adequate pain management on this record, one where he already credits that Robinette has "progressive" and "constant pain," enough to keep "her awake at night," and where Jenkinson in no way evaluates the pertinence of abuse history on potential deployment of controlled substances. *See id.* at 115. The analytical deficit is plain.

Further, Dr. Jenkinson's report has glaring internal inconsistence and a stark logic deficit. He credits that Robinette has progressive and severe pain, referencing an inability to sleep and pain constancy. *See id.* at 117. He notes the imaged hip deterioration from marked to severe over time and characterizes Robinette as suffering now from "advanced, end-stage osteoarthritis." *See id.* at 116-17. Despite this, and a recitation of multi-modal treatment, Dr. Jenkinson says she can, with limits, work "assuming that she had adequate pain control." *See id.* at 118. He offers no analysis on what medicine or treatment would yield such control given her status and treatment history, a fatal gap in the opinion. Though he cites to potential hip replacement, this does not save the day. First, that prospective possibility hardly speaks to Robinette's condition at the time of the claim or denial. Second, Jenkinson references the possibility of surgery but then denies any

---

[3] And a like deficit erodes the approach of Dr. Freimark and ARH's reliance on her opinion. She recites Robinette's substance abuse history and illicit Suboxone access and yet premises her opinion on Robinette currently being treated with Suboxone. The Court sees nothing that substantiates this description, and Friemark does not grapple with the inherent problem in viewing Robinette as able to work relative to a controlled substance Robinette reports having a regular illegal connection with. Further, Friemark concludes that Robinette is controlling her pain, but her analysis repeatedly notes the treatments as being short-lived or of waning efficacy. *See* DE 25 at 110 (noting that injections have become less effective and manipulations offer "temporary relief"). The basis for describing Robinette as currently on Suboxone does not appear in the report.

reference to such surgery in any of the medical records "available.". *See id.* at 117. If there is a relevant document, Dr. Jenkinson is conceding he does not have it; if there is no such document, then Dr. Jenkinson is staking an opinion on an unsubstantiated future medical event. This will not do, even in the forgiving arbitrary and capricious world.

"Assuming" adequate pain control means the entire finding of non-disability hinges on Robinette's pain being managed effectively. Dr. Jenkinson acknowledges that was not happening at the time of the IME, and he offers no expertise or opinion on how that critical condition would or could happen. The opinion thus fails and is itself clearly "arbitrary or erroneous," earning no plan deference. Substantial evidence does not support Jenkinson's conclusions.

Notwithstanding the inadequacy and arbitrariness of Dr. Jenkinson's report, "the ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler*, 313 F.3d at 362. In making this determination, the Court views the Committee's decision in light of the administrative record. *See id.* Here, the evidence in the administrative record overwhelmingly demonstrates that Robinette, at the time of the claim and denial, was disabled from continuing employment. Dr. Jenkinson's opinion is flawed, which leaves the record as Ms. Robinson, Robinette's long-term provider, plus Dr. Sheikh, versus a documents-only review by Dr. Freimark. Dr. Freimark's review ultimately lands on a work ability unsupported by the record and cites only a job that plainly involves duties (e.g., bending) that exceed Robinette's capacities, even to Dr. Freimark. Freimark's view itself, as noted in this Opinion, is lacking. *See supra* p. 10 n.4. The only conclusion the Court can reach based on this record is that the Committee made an arbitrary benefits decision, one not supported by substantial

11

evidence. Whatever Robinette's current status may be, she was entitled to benefits at the time the Committee rejected her claim. The Court awards her such benefits.

### C. Remedy

Having concluded that ARH erroneously denied the claim for benefits, the Court must fashion a remedy. "Where a district court determines that the plan administrator erroneously denied benefits, a district court 'may either award benefits to the claimant or remand to the plan administrator.'" *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 372-373 (6th Cir. 2009) (quoting *Elliott*, 473 F.3d at 621). The Court has "considerable discretion to craft a remedy after finding a mistake in the denial of benefits." *Elliot*, 473 F.3d at 622.

When the record indicates that the claimant was clearly entitled to benefits, an award of benefits is proper. *See id.*; *Calhoun Life Ins. Co. of N. Am.*, 665 F. App'x 485, 497 (6th Cir. 2016) (awarding benefits based on objective medical evidence that claimant was disabled). That is the case here. Robinette's medical records contain objective medical evidence that she is disabled. Ms. Robinson's and Dr. Freimark's reports (and the summarized Dr. Sheikh records) indicate Robinette has severe deformity of the hip joint with end-stage osteoarthritis due to congenital hip dysplasia. *See* DE 25 at 111-12. This has resulted in severe left hip joint pain, along with drastically limited mobility and range of motion. All records agree that the pain is constant, progressive, and without enduring treatment. Despite all the interventions and treatment modalities used to address her pain, which has provided at best temporary relief, Robinette continues to have progressively worsening pain. The lone contrary opinions on disability (from Drs. Freimark and Jenkinson) feature flaws that render them essentially null. Given the substantial and objective medical evidence demonstrating that Robinette is disabled, Robinette is entitled to an award of benefits.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that ARH acted arbitrarily and capriciously in denying Robinette's application for disability retirement benefits.  Accordingly, the Court:

1. **GRANTS** Robinette's motion for judgment (DE 26);

2. **REVERSES** ARH's denial of Robinette's claim for disability retirement benefits; and

3. **AWARDS** Robinette the disability retirement benefits sought under the Plan.

Robinette may seek reasonable attorney's fees and costs under 29 U.S.C. § 1132(g) by timely post-judgment motion under Rule 54.

This the 30th day of January, 2026.

Signed By:
*Robert E. Wier*
United States District Judge